Ms. Williams and Mr. Mercado Santana. Ms. Williams. Yes, Your Honor. Okay. Yes, good morning, Your Honor. Good morning. Good morning, Your Honor. My name is Alyssa Williams, and I represent Pro Bono,  the petitioner, Mr. Angel Argueta Anariba. I would like to request two minutes for rebuttal. Sure, that's fine. Your Honor, the questions of the law before this court can be separated generally into two overarching issues. First is the district court's error in denying reopening of the habeas petition, where Mr. Argueta's claims regarding unconstitutionally prolonged detention have been unadjudicated under what is now six years and counting. So let's the first question is that the district court error by concluding it had jurors didn't didn't have jurisdiction to consider Mr. Argueta's motion to reopen. And your response to that is yes, it did. But why? Correct, Your Honor, for two reasons. That first is that the district court failed to recognize that Mr. Argueta was bringing the same substantive claim for relief, a prolonged detention claim under the Fifth Amendment due process clause. And second, that the district court had properly acquired jurisdiction at the time of filing of the initial habeas and that the Supreme Court's precedent in endo and pedia tell us that jurisdiction is not later lost by the government's decision to transfer a petitioner out of the district. Is Mr. Argueta still detained in Louisiana? He is in Louisiana, Your Honor. He has again been transferred and is again now over the has had more than the 12 transfers mentioned in our brief. He's since the last filing has been moved to a new location in Pine Prairie, Louisiana. Yeah, I mean, my understanding is he's had like 14 transfers or so over X number of years. Have you found any habeas petitions in Louisiana? No, Your Honor. And that is because the same due process claims that were presented in the District of New Jersey and for which the District of New Jersey acquired jurisdiction have not been adjudicated on the merits. And the Supreme Court tells us that therefore the District of New Jersey is the proper court to now consider here those claims and give Mr. Argueta his day in court on the substantive due process claims. I understand, Judge Muriaka, you have questions. It's not my fault. I'm sorry. No, no, I apologize. The briefing that was submitted in connection with the motion to reopen addressed different issues than the briefing that was addressed in the original petition, didn't it? It only talked about Section 1231 and the COVID issues that were that became more apparent in the Louisiana detention. Isn't that right? It has to be looked at in context, Your Honor. And if I may just explain a little what I mean there is that the claims for relief as the respondent concedes in their briefing as well. The initial habeas petition raised two legal claims. First was under the due process clause, whether Mr. Argueta's detention had become unreasonably prolonged. And then the second, whether or not immediate release was the appropriate remedy. So that has always been the issue. What we had to address when we were back with the motion to reopen is something that came up in the district court's original decision on the habeas in October of 2019, which is that the statute that the immigration authorities were relying on had changed from 8 U.S.C. 1226 to 8 U.S.C. 1231. We were just discussing different implications of that statute. Why isn't that akin to a new petition with new grounds being asserted? Because, Your Honor, this court's case law tells us that it is the same due process analysis that is put into place when there are these Fifth Amendment claims of prolonged detention, regardless of whether it's under 1231 or 1226. The issue at the time of the October decision, Your Honor, was just a question of whether or not there needed to be an additional 90 days before under 1231 it would be right. But there was no contention that it's still a due process claim. And, in fact, I point, Your Honor, to Leslie Burse, Attorney General of the Third Circuit, where there was a very similar set of facts. A petitioner who had been detained for four years, certainly less than the six years we're facing here. But in that case, he was going back and forth between Section 1226 and 1231. And it was not an issue for this court in order to make its decision, which ultimately, in that case, the decision was to order immediate release be granted. I appreciate that. That was very helpful. Thank you. But in this case, I guess what I'm trying to understand is you said that filing a petition in Louisiana, where he is currently housed, would not be appropriate because his claims had not yet been adjudicated in New Jersey. But the judge in New Jersey did deny the original petition. At what point are those claims adjudicated such that you think it would be appropriate to then file in the place where he actually is and where there is the person who can grant the relief being requested? Your Honor, I would respond with two points. First is certainly what the case law and the legal requirements tell us, and then also sort of the practical implications of sort of following and chasing after the multiple transfers. But as to the first question, the district court made very clear in its decision, which is in the Joint Appendix 1 before this court, that its decision in October of 2019 was dismissed without prejudice and that it was essentially an issue of ripeness, which the case law tells us is not a decision on the merits. That's a procedural determination. And the court simply said, again, at this time, it was dismissing without prejudice the request for immediate release, and it was sort of further explaining the reason for its decision was that despite the habeas petition having been sitting with the court for seven months, now the statute of detention had changed slightly and the court felt it was not quite yet ripe, but in 90 days it would be and the parties should come back. And this is very clear under the case law that that's not a substantive decision on whether or not there's a violation of Mr. Argueta's due process rights for his six years in immigration detention. That was just simply a procedural decision. And the Supreme Court in Gonzalez v. Crosby sets forth very clearly that motions to reopen are important procedural safeguards in habeas cases. So certainly motions to reopen are used throughout civil procedure, but they are especially important in the habeas context. And in Gonzalez, the court gives us some confines to look at, right? It gives us a little bit of structure. And that is where we get this proposition that a motion to reopen is the proper procedural vehicle if the initial habeas decision was not decided on the merits, and then secondarily, if the petitioner continues to bring the same substantive legal claims. And we meet both of those requirements here, which is why a motion to reopen was the proper vehicle. Let me ask you this, Ms. Williams, from a practical perspective, and I think this would be a concern to all district court judges. So you have Judge Vasquez in New Jersey. How is he supposed to determine the conditions of confinement in a prison in Louisiana? Thank you, Your Honor. I think that's a very important distinction and part of the district court's error in this case. So we know what we're referring to here are the additional factors given the COVID pandemic that Mr. Armenta has now been detained during COVID. That are unique to his place of confinement, correct? That is not true, Your Honor, and this is where I would make a very important distinction that has sort of started, has been also distinguished in the district courts. There are two ways to bring these COVID claims, if I may call it as such. The court makes clear that, of course, as set forth by this court in Guerrero Sanchez, as part of a prolonged detention claim, one of the factors is you look at conditions of confinement. And so this is what we're doing in this case. We're saying, and we're saying there are exceptional circumstances and immediate release is warranted. The other way they can come up, and we see this, is that for people who cannot bring prolonged detention claims, maybe they're newly detained, you know, they haven't met this six month threshold that the Supreme Court tells us about, they can still raise COVID concerns under separate due process claims saying that because of their medical vulnerabilities, the Fifth Amendment says that their conditions confinement are now punitive. So this is a very separate basis that the district courts have recognized. It's the right, Your Honor, to be free from deliberate indifference to their serious medical needs, and the district courts recognize that as its own standalone Fifth Amendment claim. Isn't that a very factually driven analysis based on where the person is being held? That claim would be, Your Honor, because you're looking at the conditions in that facility. What we are bringing about here, Your Honor, we're simply pointing out that Mr. Argueta has very serious medical issues that are documented and the documents were under seal with the district court, and that in light of the COVID-19 pandemic, which is international, which is across the world, which is not... As Mr. Argueta would have been vaccinated? I don't have that knowledge, Your Honor, and it certainly was not in the before the district court as well. But this is our, to your point, Your Honor, that the COVID claims were just additional facts. We don't need to, we were not asking the court to look at what is the facility here doing. We were just saying from the beginning, ask for immediate release. And that is still our claim here in this case, Your Honors, and that we wanted to bring to the court's attention sort of to document in the record that we are also bringing these claims during the COVID-19 pandemic where Mr. Argueta has vulnerabilities, and it supports our reasoning that he should be immediately released. We're not separately challenging what any particular facility was doing or not doing in regards to his confinement. We're still arguing that his detention by immigration authorities is prolonged. What if we're with you halfway? In other words, what would happen if we decide, okay, Judge Vasquez, you do have jurisdiction. What happens then? I think that that's the appropriate response under the case law, certainly, Your Honor. How does Judge Vasquez get to the ultimate question? With this person being in Louisiana? The ultimate question, Your Honor, is not determined by where Mr. Argueta is located. The ultimate question is, has his detention become unconstitutionally prolonged under the four factors of die-up? The four factors set forth by this court in die-up, as this court is aware, first is, what is the length of detention? That's the number one most important factor for the court. As a practical matter, you say it doesn't matter where he is. The respondent, in this case, is the director of the Hudson County Correctional Facility. Judge Vasquez can't direct that person to do anything. There's no one in the judge's jurisdiction whom he can direct to give the relief that you're seeking. As a practical matter, I'm trying to understand how this works. Your Honor, I would argue that that position is actually not correct under the case law, that the Supreme Court tells us how to deal with this, starting back from the Endo decision. But in the Endo decision, there was someone, and the court specifically said that the Secretary of War was under that court's jurisdiction and could give the relief that was being requested, even though the person had moved to Utah or Arizona. And then fast forward to Padilla, where the Supreme Court says that the Attorney General is typically not the proper defendant in an immigration habeas case. So you don't have anybody in New Jersey that can deal with Louisiana. The Attorney General looks like it may not be the proper defendant, so who is? Who has jurisdiction to order Mr. Anariba's release? Yes, Your Honor, if I can back up, and I think this is important to parse out what Padilla said, how it relates to Endo and to answer Judge Noriega's question as well as how can order that will be effective in, you know, where to whomever is currently holding Mr. And even if he gets transferred again. So I think we need to very carefully start with the Supreme Court's decision in Padilla and look at the context because the respondent does rely on this case quite heavily through its brief. And Padilla repeatedly throughout the brief, excuse me, throughout the court's decision makes clear that it's referring to the proper party to be named at the time of filing. The court was concerned with when does the district court acquire jurisdiction. Remember in Padilla, the case was filed in the Southern District of New York when the petitioner had already left that jurisdiction. So very different set of circumstances here. And the Supreme Court made clear that we are talking about the warden of the facility has to be named at the time of filing and that that person must be in the court's jurisdiction. And that is how the district court acquires jurisdiction. And in fact, we need to read Padilla and Endo together. And that is not something we should just assume that's something that the Padilla court actually tells us. The Padilla court, your honors, reminds us that Padilla stands for the important but limited proposition that once the district court acquired jurisdiction, the removal of the person from from that court's jurisdiction does not cause the court to lose the ability to issue a writ. Let's assume that this. The judge was incorrect here that Judge Vasquez had jurisdiction. Now the case comes back to Judge Vasquez. Wouldn't it appear that there are two options, either try to find somebody in New Jersey, who might have the ability to order a release or whatever if that were ultimately the case, or simply transfer the case to Louisiana, wouldn't that second option be the most pragmatic. Your Honor, to, to answer that that last question first would that be the most pragmatic I would say no, because for multiple reasons. First is, what if we get to Louisiana and then the government has decided they want to move him again to Mississippi, or again to Mississippi, then transfer the habeas action to Louisiana, and let the courts in Louisiana deal with it. Well your honor as a practical matter the case has been with the district court very substantive briefing and more than 20 page habeas extensive facts document documents submitted under seal that's where pro bono counsel has been. If we are going to issue a pause in one particular place, it makes the most practical sense to do that in New Jersey remanded. Certainly the court could issue an order for Mr get to be to be brought back to New Jersey, and the court could stay there and I would offer your honor also that, that this is not something necessarily unique to this case a very Griffith first ever, which is cited in our brief was a case of starting the middle district of Pennsylvania went up to the Third Circuit, the Third Circuit found that in a different factual context but third, third circuit had found that jurisdiction was proper but but because the person and moved the case in the interest of justice, it would send it to Minnesota, the case then had to go through Minnesota went up to the Fifth Circuit, and the Fifth Circuit said no it needed to go back under this long line of case law and be heard in the middle district of Pennsylvania where jurisdiction had properly started. And so now years later, this person is still detained having having the, the, the case heard and awaiting his day in court and that's something we need to avoid here that as your honors. I believe can follow from this, the Supreme Court case was a jurisdiction was proper in the district of New Jersey in the court has said that under the courts habeas powers, if the court acquired jurisdiction and has the court can then issue any orders in accordance with that writ, and then, and then we will find any appropriate official who can make effective the orders of the court but certainly the claims are right for review. The district court has the power to issue this order and is properly before the district of New Jersey. Thank you. We'll get you back on rebuttal and hear from your opposing counsel. Mr Mikado Santana. Thank you, Your Honor, and may please support. My name is Victor Mercado and I represent the United States. Can I just just back questions at the outset, why was Mr Agueda transferred to Louisiana. I, I don't have the, I don't know why he was transferred to Louisiana, I, I would believe that that would have to do with Louisiana when it's when they're getting ready to ship somebody out, and the flights often leave from Louisiana. So, at least that's been my experience in the past, but at this point, it looks like there's 14 transfers between five different ice facilities in four different states. Is that how the system works. Well, I am honestly not in the position to explain, I said decision for transfer or decisions related to housing needs, or whether this is, or whether this was related to a possible removal that could not happen I'm not in a position to make those representations, but to the extent that those. Sorry. No, go ahead, you go finish, finish your thought, but to the extent that those transfers relate to the habeas petitions. The issue here is that at the moment that point that Mr Agueda had a claim under like had a possible claim under 1231 that happened when he was when after his after the district court in New Jersey had already disposed of the habeas petition. And when he was housed in a detention facility in Louisiana. His COVID claim arose out of a facility in Louisiana. And out of conditions in a facility in Louisiana, and any effect of Second Circuit stay on the detention authority and the ability for for for the government to detain him arose when he was detained at a facility in Louisiana. Let me ask you this, just from a practical perspective, Mr. Are you suggesting that every time somebody moves to have to refile the habeas petition in the jurisdiction where they're being held. No. So what are you suggesting. Okay, what I'm what I'm suggesting here is, if, if he had been transferred while his habeas petition was still pending the case law is clear that the District of New Jersey would have retained jurisdiction over the transfer so these concerns about about transfers would not have affected the district courts authority to entertain the habeas so long as he was so long as the habeas was open. This is the habeas that was already decided by the district court, and it was already closed by the district court. What's your response to the argument that we heard that this was not a habeas petition that was decided on the merits, it was decided on a lack of ripeness, and that the underlying issues, whether it be under section 1226 or section 1231 were the unconstitutionally prolonged conditions without a hearing and a violation of Fifth Amendment due process so that the, the argument as I understand the pellet is making is wasn't decided on the merits, it was decided on ripeness issues and the judge invited them to come back so it wasn't, it wasn't decided, and that the issues are the same so take those each and tell me what your responses, please. In, in that regard what I would what I would say is that to the, I mean to the extent that the judge had discretion to reopen a previously closed habeas petition. Given the, given the facts here there was no, there was no abuse on discretion to decline to reopen when he would be when there were factors such as he exercising jurisdiction over a detention facility that fell beyond the borders of his jurisdiction. So, in, and also the fact that the detention, the detention related claims relate to facts that, but the judge didn't say he was exercising his discretion. And, you know, saying I have jurisdiction and I'm going to transfer the judge that I don't have jurisdiction. So what is the basis for your argument that the judge had discretion in what he was doing, it seemed to me the judge was saying, I don't have a choice I don't have jurisdiction. And that's exactly what his page and a half. Decision stated. I'm sorry. I'm sorry I couldn't hear you, Your Honor, and that's exactly what his page and a half order stated for opinion stated I don't have jurisdiction. Yes. But when I talk about a piece of discussion I'm talking about, about the review of the Center for review for a motion to the denial of a motion to reopen. But ultimately it is. I mean, based on the based on the facts here, these are. I mean, these are new claims that arose in a facility that was outside of the district courts decision. This records jurisdiction so the district court wouldn't have had jurisdiction over the claim if it was. If it was filed initially so the district court properly declined to exercises jurisdiction over claims that let me miss was I understand Miss Williams argument, the threshold issue the real issue is the prolonged detention, the many many years without a hearing. The judge of Esquires isn't a position so many has jurisdiction to rule on the merits on that claim right not withstanding the coven issues. If he had jurisdiction, he had jurisdiction that's what I'm saying, if he had jurisdiction. Right. Yes. Okay. Do you have any authority that says that a habeas petition properly filed at the outset and later transfer can defeat the court's jurisdiction. So if it's properly filed in New Jersey. And he's later transferred to Louisiana. Can that defeat the district in New Jersey's jurisdiction. No, our, the government's position is that if it was transferred while the habeas petition was open, then the transfer would not defeat jurisdiction. The problem here is that the habeas was already decided and closed by the time that the new claims have arisen. Is it your position that the habeas petition was closed was decided on the merits. I asked that as that was a terrible question. Is it your position that the habeas petition was decided on the merits. That was a good question. There's an answer. Um, well I would, I would say that the, at that point, the, what the court had found was that the, the detention authority had changed and therefore there was the authority under the, like the, there was no. Like the new claim was not ready for consideration. So, yes, it wasn't considered on the merits, to the extent that at 1226 claim was raised, but you keep going back to the new claims Miss Williams is arguing that threshold claim is the prolonged detention. So, you're not telling us the judge Vasquez ruled on that are you. No. Okay, so it was not decided on the merits. No. Is that correct. Yeah, I would, I would, I would agree that it wasn't decided on on the merits hasn't been. But, and that's the same claim that was raised in the petition to reopen the prolonged detention, as they would say unconstitutionally prolonged detention. Right. Well the clean I mean the, the claim that was originally raised was a challenge to 1226 detention. That was, that was dismissed by the court because there was a detention authority switch to 1231. Wasn't this detention, really under 1226 see. At what point, Your Honor. Well, it was a mandatory detention, because of the particular crime that was committed right. Yes. So it was 1220, it was 1226. When he filed the original habeas petition. At the time that the district court dismissed the habeas it was dismissed because detention authority had transferred to 1231. And after he was transferred, and after the district court made the decision. The Second Circuit had issued a stay of removal, and that under Fifth Circuit case law would the Fifth Circuit hasn't decided whether that the teacher authority will will be 1226 or 1231 when the stay is in place. Just being. I'm just trying to think practically here. If you're the government. And you have the type of crime that was committed here. But what's the person I think that 96 months. Why not just say look, if the confinement more than six months in this case over six years is unreasonable. And it's under 1226 see all that the detainee gets is an individualized bond here. And the government then has a chance but for clear and convincing evidence that continued detention is necessary. And it would look like you have a really good case to make that why not just work backwards and say no matter what happens we still win. Instead of fighting over jurisdiction instead of fighting over whether it's not 1226 see but instead of 1231. Why not just get to the bottom line. Well, that, that could happen if a proper habeas was filed in the Western District of Louisiana, and where the parties could say that a proper habeas was filed in the District of New Jersey. And that's where it should come back to again recording still has two options. It could could try to deal with it and it can find somebody that can well maybe three options, maybe order that the petitioner be brought back to New Jersey. Maybe see if there's somebody in New Jersey, that could enforce an order. If there were to be released, or simply just to say, I hereby transfer the matter to Louisiana. And my guess is it likely would be the third option. You might get what you're looking for, but by a different route. Well, I think the problem that judges have with what you're suggesting here is that if we rule in your favor. The government can continually defeat jurisdiction simply by transferring the petitioner all around. And in this case, I don't think you necessarily want the type of press attention to somebody who's been given 14 different transfers over six years in four states and X number of facilities without a hearing without a hearing. Well, I wouldn't. It doesn't look good. Well, I understand that. Yeah, the facts are not favorable for the government, I would like that that is true, but isn't it. Wouldn't it just create a mess quite frankly in terms of folks filing, you know, habeas petitions as soon as they arrive in a facility, because they might be transferred in a month. And you'd be shooting at moving targets here all the time. Is that what the government wants. No, no, no, no, no. I, what the, what the, what the government is trying to explain here is look if if a person files a habeas in like false habeas, and the person gets transferred the, the, I mean the law is clear that the, the transfers in those and then from that other jurisdiction that person tries to get the first habeas court to reopen the case and decide issues that happened outside of that habeas court jurisdiction. That's the concern here. These are issues that happened outside because again the threshold issue is the length of four plus year detention, with no hearing. Yes, but you're not just. Go ahead. No, no, go ahead, Your Honor. No, no, no. Please answer judges. Oh, no, no, no, the point I was going to make about that is that the claims that are being raised here I mean there's a, there's a detention claim. And there is a claim about COVID and those. And, and, and the and the half and those claims, especially the COVID claim happened outside of the district of New Jersey, arises outside of the district of New Jersey. If Your Honor may have the question. Yeah, I just wanted to make sure that I understand so there's no dispute that Mr. has been in detention for more than four years I think it's closer to six without a hearing on the length of his detention. Is that right. Um, if I recall properly from from the record I will have to verify this but I believe that he may have received some hearings I cannot. He had a hearing but it was years ago. Yeah, it wasn't it wasn't. Yeah, it wasn't a hearing pursuant to to recent district court order that is correct. Okay. And are you saying the only way he can get such a hearing. Is to have a habeas petition decide at this moment. That's my understanding. Okay, so isn't it important that we find a way for him. I'm not saying that he's going to be released, but to have a hearing where someone who can look at the facts and determine whether he should be released on bond whether he's a candidate for that, or isn't, isn't it important that someone has jurisdiction. And if he's if he's a moving target. It seems like making it, you're making it very difficult for anyone to have jurisdiction over. Well, the. I mean the the court proposal that the case be transferred to Louisiana would be. I mean we'll get us to the, to the, to the court with a proper jurisdiction. The other avenue there will be for the petitioner to file the claim in the Western District of Louisiana but there are ways for him to hear the claim. It's, it's just that in our, in our view the district of New Jersey should. It's not at this point, proper venue. Any further questions of my colleagues. Thank you. Thank you. Ms Williams. Can I just start off by just, again working backwards with you. There was in, I guess 2017 or so, and IJ in the Southern District of New York, denied. Mr. Aguero's request for a bond because he was a flight risk and a danger to the community. What would possibly change that. Your Honor, if I can make clear that first the, the habeas was filed in 2015 in the Southern District of New York, and the Southern District ordered that a bond hearing be heard that the detention was uncommon. And at the hearing the immigration judge at that time, determined that there was only. At the time he had filed he had been in for about a year and so weighing the factors he found the determination of flavor on 17 I thought he was immediately transferred in December of 14 to ice custody after he served his 96 month sentence Is that correct. That's correct. So, but my point here is given the particularly violent nature of the 2007 offense for which he got the 96 month sentence. How can. What makes you think that the courts going to say somehow he's been rehabilitated that he can be safely released into the community. When you know he's been determined to be a flight risk and a danger to that community. Two points that your honor first with that this court in Nago NGO verse ins made very clear that to presume dangerousness to the community and risk of flight based solely on a petitioners past record does not satisfy due process court went on to say We're talking about civil detention and that is why in her mon Santos and die up the court made. But what all you get under German Santos is a bond hearing. And my question to you is the practical question is, let's assume you get that. How do you win in ship and dispelling the click the notion that this person might be a flight risk or a danger to the community. We run it first what I would refer back to is I think your honor talks about Mr get his 96 month sentence and I would point your honor to the Third Circuit case of Leslie, which arose here where that person had a 168 month sentence, and ultimately was granted through this court's decision because of how the length of detention. He was entitled, eventually to immediate release, and not even a bond here that was very, very different set of facts in Leslie and also related to what was determined to be in effect a structural issue. Let's assume you get everything you got jurisdiction, you get your bond hearing. My question to you is practically, how do you dispel the notion that was before the IJ in 2017 in the Southern District of New York that this person isn't going to get out for one or two, or both reasons, flight risk and dangers the community. First, you know we are very prepared for if this case goes back, we are ready to have Mr get his day in court and certainly over the years we've been working extensively he has worked very closely with a social worker in our office he's completed many programs through his facility. He's been in contact with his psychologist and has been under necessary appropriate medication so we certainly have plenty of evidence that we are ready and prepared to submit when Mr gets it gets his, his day in court. But even, even right today, the primary evidence would be covert conditions and they may, they may be significantly. Not good in Louisiana or wherever. Mr. What it will be, but we don't know if he's been vaccinated. We don't know if the there's been a significant diminution in the number of cases in the facility that he is. So there's a whole lot of things that we don't know. And yet, always hanging out there is. If I were to release this person. I would feel uncomfortable. At least according to some IJs, and certainly the one that did previously rule that this person would be a flight risk and a danger to the community because of the particularly violent crime committed. If I may your honor again that that is precisely why remand is appropriate because the factual record has not yet been developed and none of these issues have been have been addressed and of course that's something that will be appropriately considered by the immigration court and so it's just not something that the court here under the case law needs needs to concern himself with. And that's also exactly why when we're thinking through these constitutional civil prolonged detention cases Mr get to has already served his time in the criminal sentence the criminal court found it sufficient that by this point, he would be out in the community so we're now just talking about someone's civil detention at what point after six years is that unconstitutionally prolonged and to develop the facts, but if I may your honor what we need to focus on is that you agree you agree that the only thing that he gets is a bond hearing if you win. We are asking in light of this court's case law that also the district court consider and hear the arguments in support of a request for immediate release to allow us to make those arguments and be heard by the district court. Again, because as this court has found in other cases where detention has risen to four years, that's an appropriate. That's an appropriate form of relief and and we were also asking for a hearing on that your honor. Okay, I'll give you one more minute I've stepped all over your time. Go ahead. Not at all. Thank you, your honors it just that the district court made an error of law in this case and failing to recognize that it had jurisdiction, and where this error of law occurred this court must vacate the decision of the district court. I'd ask your honors to look back at the record very carefully at the habeas petition at the transcript of the proceedings that document 14 in the in our opening briefs and reply briefs and it is very clear that these coven facts are not any additional claims and that Mr get to is simply bringing forth his claim that his civil detention has become unconstitutionally prolonged runners if there are no further questions we'd ask that the decision of the district court be vacated. And in light of the length of detention in this case remanded with an order for an expeditious hearing to consider the arguments for immediate release and bond. All right. Thank you very much. Thank you to both counts for being with us today. Thank you, your honor.